NO. 07-02-0063-CR


NO. 07-02-0064-CR


NO. 07-02-0065-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



AUGUST 5, 2002



______________________________




GREGORY RAY ROY, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;



NOS. 41,767-B, 41,768-B, 41,790-B; HONORABLE JOHN B. BOARD, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 Appellant Gregory Ray Roy filed notices of appeal in the referenced matters in
which his probation was revoked in Cause No. 07-02-0065-CR and his guilt was
adjudicated in Cause Nos. 07-02-0063-CR and 07-02-0064-CR. Because the clerk's
record had not been filed due to appellant's failure to pay or make arrangements to pay
for the record, we abated the appeals to the trial court for a hearing. However, appellant
has now filed a motion to dismiss his appeals. That motion has been signed by both
appellant and his attorney. 

 Because appellant has complied with the requirements of Rule of Appellate
Procedure 42.2(a) and because this court has not delivered its decision prior to receiving
the motion, the motion is hereby granted. Having dismissed the appeals at appellant's
request, no motions for rehearing will be entertained, and our mandates will issue
forthwith.

 

 John T. Boyd

 Chief Justice


Do not publish. 



pay the assessment by
payment of $40.00 per month; however, those checks were not accepted after March 2004
and were returned to Goddard. Subsequently, Homeowners filed suit attempting to
foreclose their lien for unpaid assessments, monetary damages for unpaid assessments,
and reasonable attorney fees. 

 Goddard initially attempted to hire a person, who claimed to be an attorney, to file
an answer and represent Goddard throughout the litigation. Initial discovery was filed by
Homeowners, which included request for admissions. Some of the request for admissions
were not answered and were subsequently deemed admitted. Homeowners filed a first
motion for summary judgment that the trial court granted. Goddard belatedly learned that
the person he hired to represent him was not licensed to practice law and that that person
had not filed a response to Homeowners's motion for summary judgment. Goddard hired
new licensed counsel and an agreed order granting a new trial was entered.

 Subsequently, Homeowners filed a second motion for summary judgment arguing
that the annual assessment was proper and that, pursuant to the Declaration filed in the
deed records of Bexar County, Homeowners had a valid lien on the Goddard property. 
Homeowners also alleged, in the motion for summary judgment, that the Board of Directors
of the Homeowners had the authority to set the annual assessment under the provision of
the Declaration and the By-Laws of the Homeowners, which are also filed in the deed
records of Bexar County.

 Goddard filed his reply alleging that the only way to raise the annual assessment
was pursuant to Article VI of the Declaration and that Homeowners had failed to provide
summary judgment evidence showing that the assessments were proper. Goddard then
filed a counterclaim alleging that Homeowners breached the restrictive covenants
contained in the Declaration, alleging that Homeowners committed an unspecified violation
of section 202.004 of the Texas Property Code, requesting for declaratory relief
determining whether two-thirds (2/3rds) of the property owners were required to approve
a raise in the annual assessment, and seeking an award of reasonable attorney fees. 
Additionally, Goddard filed a no-evidence motion for summary judgment claiming that
Homeowners had failed to prove that they had properly raised the annual assessment. 
Therefore, according to Goddard, he was entitled to judgment as a matter of law. 

 The trial court granted Homeowners a partial summary judgment on the issue of the
assessments being due and unpaid, granted Homeowners a lien on the Goddard property,
and ruled that Homeowners were entitled to foreclose on the lien and sell the property. 
The trial court subsequently granted a summary judgment on the issue of attorney fees for
Homeowners in the amount of $4,000 through trial of the action and $5,000 for each level
of appeal through which the judgment may be reviewed.

 Goddard's first issue contends that the trial court erred when it did not permit
Goddard to strike deemed admissions. However, we will not address this issue as we have
determined that the issue concerning the granting of Homeowners's summary judgment
will obviate the necessity of addressing this issue. Tex. R. App. P. 47.1.

Summary Judgment


 Summary judgments are reviewed de novo. Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005). When conducting a de novo review, we apply the following
standards in a traditional summary judgment:

 (1) The movant has the burden of showing that there is no genuine issue of
material fact and that it is entitled to judgment as a matter of law; (2) in
deciding whether there is a disputed material fact issue precluding summary
judgment, evidence favorable to the nonmovant will be taken as true; and (3)
every reasonable inference must be indulged in favor of the nonmovant and
any doubts must be resolved in favor of the nonmovant. 


Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997) (citing Nixon v. Mr. Prop.
Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985)). A no-evidence summary judgment is
essentially a pretrial directed verdict and we apply the same legal sufficiency standard in
reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. 
See Aguirre v. S. Tex. Blood & Tissue Ctr., 2 S.W.3d 454, 456 (Tex.App.-San Antonio
1999, pet. denied); Roth v. FFP Operating Partners, L.P., 994 S.W.2d 190, 195
(Tex.App.-Amarillo 1999, pet. denied). We review the evidence in the light most favorable
to the respondent against whom the no-evidence summary judgment was rendered,
disregarding all contrary evidence and inferences. Merrell Dow Pharms., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997); Roth, 994 S.W.2d at 195. A no-evidence summary
judgment is improperly granted if the non-movant presents more than a scintilla of
probative evidence to raise a genuine issue of material fact. Roth, 994 S.W.2d at 195. 
When both parties move for summary judgment and the trial court grants one motion and
denies the other, the appellate court reviews the summary judgment evidence of both
parties, determines all questions presented, and renders the judgment that the trial court
should have rendered. Bradley v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999).

 Homeowners's summary judgment alleges that the assessment for the annual dues
was properly set by the Board of Directors of Homeowners. Specifically, Homeowners
contends that, when the Declaration provisions are read in conjunction with the By-Laws,
the Board of Directors has the authority to set the annual assessment. Goddard counters
that Article VI, sections 3 and 5 of the Declaration must be read to require approval by 
two-thirds (2/3rds) of the owners of property within the Northhampton subdivision to raise
the annual assessment. 

 In analyzing the competing propositions, we must keep in mind that, when we are
construing the restrictive covenants, the Declaration provisions are subject to the general
rules of contract construction. See Pilarcik v. Emmons, 966 S.W.2d 474, 478 (Tex. 1998). 
In construing the language of the restrictive covenants, our task is to determine the intent
of its framers. See Wilmoth v. Wilcox, 734 S.W.2d 656, 658 (Tex. 1987). Whether the
relevant language is ambiguous is a question of law. See Pilarcik, 966 S.W.2d at 478. 
Covenants, like contracts, are unambiguous as a matter of law if they can be given a
definite or certain legal meaning. Grain Dealers Mut. Ins. Co. v. McKee, 943 S.W.2d 455,
458 (Tex. 1997). We are cautioned to use the words and phrases contained in the
covenants in their generally accepted meaning. See Wilmoth, 734 S.W.2d at 657-58.

 To support its motion for summary judgment, not including the issue of attorney
fees, Homeowners presented the trial court with the following summary judgment evidence: 

 1) Declaration of Covenants, Conditions and Restrictions for Northhampton
filed in Volume 3056, page 1125, Official Public Records of Real Property of
Bexar County, Texas; 

 2) Bylaws of Northhampton Homeowners Association, recorded in Volume
3344, page 82, Official Public Records of Real Property of Bexar County,
Texas; 

 3) Defendant's Responses to Plaintiff's Interrogatories; and

 4) Affidavit of Barbara Lowry. 


As both Homeowners and Goddard point to Article VI, sections 3 and 5 of the Declaration,
a review of these provisions is warranted. 

ARTICLE VI


COVENANT FOR MAINTENANCE ASSESSMENT


 Section 3. Basis and Maximum of Annual Assessment. Until the year
beginning January 1, 1985, the maximum annual assessment for a duplex
shall be Three Hundred and no/100 Dollars ($300.00) per year, and the
maximum annual assessment for a fourplex shall be Six Hundred and
no/100 Dollars ($600.00) per year. 


 The Board of Directors of the Association may, after consideration of
current maintenance costs and future needs of the Association, fix the
annual assessment for any year at a lesser amount. 


 Section 5. Change in Basis and Maximum of Annual Assessments. 
Subject to the limitations of Section 3 hereof, and for the periods therein
specified, the Association may change the maximum and basis of the
assessments fixed by Section 3 hereof prospectively for any such period
provided that any such change shall have the assent of two-thirds (2/3) of the
votes of each class of Members who are voting in person or by proxy, at a
meeting duly called for this purpose, written notice of which shall be sent to
all Members at least thirty (30) days in advance and shall set forth the
purpose of the meeting. 


 When reading the two provisions together, it is apparant that section 3 applies until
January 1, 1985, to limit the amount of the assessments to the sums indicated. Section
5 is applicable, subject to section 3, for the periods specified in section 3. In other words,
until January 1, 1985, the only way that the annual assessment could be raised is with a
two-third (2/3) vote of each class of the members voting in person or by proxy. The net
affect of this construction is that section 5 ceased to be operational on January 1, 1985. 
This appears, at first blush, to be inconsistent with an intent to have a viable homeowners
association. However, when viewed in the overall scheme, as demonstrated in the
Declaration and By-laws, this interpretation results in a fully operative homeowners
association. Initially, there were two classes of membership, Class A and Class B. Each
had voting privileges. Class A was all owners, with the exception of the developer, and
each owner had one vote for each residential parcel owned. Class B membership was
granted to the developer, as defined in the Declaration. Class B was entitled to three votes
for each residential parcel owned and was converted to Class A membership upon the
earlier of: 1) when the total votes outstanding in the Class A equal the total votes
outstanding in the Class B membership; or 2) on December 31, 1984. When placed in
context, it becomes clear that the purpose of sections 3 and 5 was to lock the initial
assessment down to the amount specified in the Declaration, for the period of time
specified, unless two-thirds (2/3rds) vote of all members was received to raise the
assessment. 

 How then could the Homeowners raise the annual assessment after December 31,
1984? To answer that inquiry, we must look to both the Declaration and to the Bylaws. 
Article VI, section 9 of the Declaration provides that the Board of Directors of the
Homeowners shall fix the date for the commencement of the assessment. The Board is
required to send notice of the annual assessment to each owner of a residential parcel
located within the development. A review of the By-laws reflects that pursuant to Article
VIII section 1 (b) the Board of Directors has to power "to establish, levy, assess and collect
the assessments or charges provided in Article III. . . ." Article III of the By-laws provides
that every person who is a record owner of a residential parcel subject to the Declaration
is a member of the Homeowners. Further, the rights of membership are subject to
payment of the annual and special assessments levied by the Homeowners. 

 A review of the Texas Property Code reveals that Chapter 202, (1) Construction And
Enforcement Of Restrictive Covenants, contains the following terms:

 "Dedicatory instrument" means each governing instrument covering the
establishment, maintenance, and operation of a residential subdivision,  . . . . 
The term includes a declaration or similar instrument subjecting the real
property to restrictive covenants, bylaws, or similar instruments governing the
administration or operation of a property owners' association . . . . 

 "Restrictive covenant" means any covenant, condition, or restriction
contained in a dedicatory instrument, whether mandatory, prohibitive,
permissive, or administrative. 


Tex. Prop. Code Ann. § 202.001(1) (Vernon 2007). Homeowners proved that the
dedicatory instrument was filed in the property records of Bexar County. The By-laws of
the Homeowners were also filed in the property records of Bexar County and, under the
terms of the statute, become part of the dedicatory instruments that control the operation
of the Homeowners. Goddard has not challenged the validity of any of the dedicatory
instruments, rather his position is that only the dedication document controls. For the
reasons stated above, we have rejected that viewpoint. When all of the dedicatory
instruments are viewed collectively, the correctness of the trial court's granting of the
Homeowners's summary judgment is apparent. Accordingly, we overrule Goddard's
second contention that the trial court erred in granting Homeowners's summary judgment. 


 Based upon our view that the trial court was correct in granting Homeowners's
summary judgment, we cannot say it was error to overrule Goddard's no-evidence motion
for summary judgment. A construction of the rights of Homeowners consistent with the
grant of its summary judgment precludes a granting of Goddard's summary judgment. 
Accordingly, Goddard's third contention is overruled.




Conclusion


 Having overruled Goddard's contentions, the judgment of the trial court is affirmed.

 

 

 Mackey K. Hancock

 Justice



 

 
1. Neither party is arguing that the provisions of the Texas Property Code are not
applicable to this subdivision.